IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00315-MEH

NICHOLAS PAUL ESPINOZA,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,

    Defendant.

---

# ORDER
---

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiff, Nicholas Paul Espinoza, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits ("DIB"), filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and his application for supplemental security income benefits ("SSI"), filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83c. I find that the ALJ properly analyzed the opinion statements of Mr. Espinoza's treating physician. Additionally, the ALJ did not err in formulating Mr. Espinoza's residual functional capacity ("RFC"). Accordingly, I affirm the ALJ's decision that Mr. Espinoza is not disabled.

## **BACKGROUND**

**I.    Mr. Espinoza's Relevant Medical History**

    Mr. Espinoza was born on August 3, 1983; he was thirty-one years old when he filed his application for DIB and SSI. [AR 178]. Mr. Espinoza claims he became disabled on October 1,

2014 due to physical impairments. [*Id.*]

In February 2012, Mr. Espinoza began seeing Dr. Lisa K. Gieseke at Cornerstone Family Practice for sleep apnea, asthma, tonsillitis, and elevated blood pressure. [AR 557]. Dr. Gieseke listed Mr. Espinoza's allergies as pollens, dust, animal dander, mold, tree spars, and grasses. [*Id.*] Dr. Gieseke ordered Mr. Espinoza a new mask for his CPAP machine and refilled his asthma medication. [AR 558]. At a follow-up appointment on March 6, 2012, Dr. Gieseke reported that Mr. Espinoza was experiencing wheezing and joint pain. [AR 554–55]. However, the results of his physical exam were normal. [AR 555]. Mr. Espinoza regularly visited Dr. Gieseke at least through the SSA's denial of his application. [AR 536–53].

In November 2013, Dr. Gieseke referred Mr. Espinoza to Dr. Katherine Tsai for a consultation regarding his allergies and asthma. [AR 436]. Dr. Tsai performed allergy skin testing and a spirometric evaluation, both of which appeared normal. [*Id.*] Dr. Tsai told Mr. Espinoza to start using Zyrtec to control his allergies. [AR 416]. Shortly thereafter, Dr. Gieseke allowed him to return to work with no restrictions. [AR 437].

Mr. Espinoza returned to Cornerstone Family Practice with complaints of back pain on February 24, 2014. [AR 412]. Dr. Gieseke noted that Mr. Espinoza had chronic back pain, and she referred him to Rocky Mountain Osteopathic Medicine ("RMOM") for a consultation and physical therapy. [AR 413].

Two days later, Mr. Espinoza visited Dr. Mark C. Winslow at RMOM. [AR 351]. Mr. Espinoza informed Dr. Winslow that he fractured his vertebra six or seven years prior. [*Id.*] He reported his current lower back pain as six out of ten. [*Id.*] Dr. Winslow ordered an x-ray to confirm a potential stress fracture in Mr. Espinoza's lower back. [AR 355]. Although the x-ray

did not reveal a spinal fracture, it showed a "[n]ondisplaced bilateral L5 pars defects." [AR 465]. Dr. Winslow also informed Mr. Espinoza that his moderate to severe obesity is contributing to his lower back pain, and he has "[v]ery poor use of hips." [AR 355]. Dr. Winslow recommended osteopathic manipulative treatment and set a follow-up appointment for one week later. [AR 355–56].

Also on February 26, 2014, Mr. Espinoza visited Candice Brueck for physical therapy. [AR 345–50]. Ms. Brueck's evaluation of Mr. Espinoza revealed "lumbar extension/rotation syndrome." [AR 350]. She created short-term and long-term goals and recommended physical therapy one to two times per week. [*Id.*]

On March 6, 2014, Dr. Winslow performed sixty minutes of therapeutic exercises designed to increase Mr. Espinoza's flexibility, strength, and balance. [AR 343]. Dr. Winslow informed Mr. Espinoza that he may want to participate in a professional weight management program to improve his back pain. [AR 344]. Dr. Winslow recommended that Mr. Espinoza remain off work until the following week due to his back pain. [*Id.*]

Mr. Espinoza continued to regularly see Dr. Winslow for approximately six months. [AR 366]. During many of these visits, he also had a physical therapy session with Ms. Brueck. [AR 339]. Mr. Espinoza was unable to work as a bus driver during this time. [AR 331, 335]. On March 14, 2014, Dr. Winslow noted that Mr. Espinoza tolerated exercise well but had difficulty engaging his hamstrings. [AR 340]. During physical therapy on March 20, 2014, Ms. Brueck stated that Mr. Espinoza was able to exercise well and had better recruitment of abdominals; however, he complained of increased pain. [AR 339]. Approximately two weeks later, Dr. Winslow and Ms. Brueck noted that Mr. Espinoza was involved in a recent car accident that

3

increased his pain and inability to walk. [AR 320, 329].

On April 11, 2014, Mr. Espinoza underwent an MRI of his lumbar spine. [AR 299–300]. The MRI revealed minor shallow broad based disc protrusion at L1–2, negligible posterior disc bulge at L2–3, coincidental nondisplaced bilateral pars interarticularis defects at L5–S1, but no osseous trauma or spondylolisthesis. [AR 300].

During an April 18, 2014 visit with Dr. Winslow, Mr. Espinoza reported intermittent pain that increases while standing. [AR 316]. Because of this he stated that he "[d]oes not feel ready to return to work." [AR 315, 327]. Dr. Winslow reviewed the results of his MRI and performed sixty minutes of osteopathic manipulation. [AR 317–18].

On May 14, 2018, Dr. Winslow worked on additional therapeutic exercises with Mr. Espinoza. [AR 312]. Dr. Winslow noted that "recent exacerbation seems to have improved," and "the patient is safe to return to work activities . . . ." [AR 313]. On June 13, 2014, Mr. Espinoza reported having "good relief" from his back pain after an injection. [AR 306]. However, he noticed increased pain when he began working due to the seat bouncing while driving the bus. [AR 308]. As a result, Dr. Winslow noted, "If patient fails to improve m[a]y need to consider a different line of work due to his underlying back complaints and preexisting medical problems." [AR 308]. By June 27, 2014, Mr. Espinoza stopped working due to his back pain. [AR 309, 375].

Mr. Espinoza had another injection on July 25, 2014, which decreased his pain level to three out of ten. [AR 379]. Mr. Espinoza reported to Ms. Brueck that he would try to return to work without restrictions. [*Id.*] However, on August 22, 2014, Dr. Winslow noted that Mr. Espinoza "tried to return to work and again [was] unsuccessful in spite of modifications in

4

mechanics, back brace, [and] seat cushion." [AR 369].

During Mr. Espinoza's September 19, 2014 osteopathic manipulation appointment, Dr. Winslow stated that Mr. Espinoza "has attempted to return to work several times and in my opinion he will not be able to return due to persistent lower back pain." [AR 366]. On the same day, Mr. Brueck noted that Mr. Espinoza "has not been compliant with his home program," and he should "consider weight loss surgery." [AR 368]. Because Mr. Espinoza had received only limited relief from therapy at RMOM, Dr. Winslow terminated his care. [AR 366].

On May 19, 2016, Mr. Espinoza visited Dr. Gieseke regarding his ongoing back pain and his pars fracture at L4–5. [AR 530]. Mr. Espinoza reported to Dr. Gieseke that his injections have failed to eliminate his back pain, and he wants to undergo surgery but cannot proceed due to his weight. [*Id.*]

On June 27, 2016, Mr. Espinoza told Dr. Gieseke that he had been out of his new job as a customer service representative for two and one half weeks due to his back pain. [AR 528]. He described his pain as "radiat[ing] everywhere" and "sharp and stabbing." [*Id.*] However, Mr. Espinoza reported that medical marijuana has been relieving his pain. [*Id.*] Dr. Gieseke encouraged Mr. Espinoza to return to work. [AR 529].

In his July appointment with Dr. Gieseke, Mr. Espinoza stated that his back pain "seems to be improving," but he still uses a cane to walk and complete his work duties. [AR 526]. He requested a referral for bariatric surgery, even though he has lost some weight on his own. [*Id.*] Dr. Gieseke referred him to Dr. Georgescu. [AR 527].

Mr. Espinoza visited the emergency room at Denver Health Medical Center on October 28, 2016, where he was diagnosed with a lumbar sprain. [AR 449]. Mr. Espinoza was

5

discharged after being provided with information on lambrosacral strains. [*Id.*]

On November 1, 2016, Mr. Espinoza returned to see Dr. Gieseke and noted he had lost almost one hundred fifty pounds without seeing any improvement in his back pain. [AR 523]. He told Dr. Gieseke that he had not worked since October 18, 2014. [*Id.*]

The next day, Mr. Espinoza visited SpineOne, where Dr. Kayvon Alizadeh diagnosed him with lumbar spondylosis and degenerative disc disease of the lumbar spine. [AR 510]. Dr. Alizadeh ordered a lumbar spine MRI to evaluate disc and nerve root pathology. [AR 510]. This MRI revealed "no new abnormality." [AR 461]. Dr. Alizadeh then performed a medial branch block surgery. [AR 512–13].

On November 4, 2016, Dr. Gieseke completed an FMLA form certifying Mr. Espinoza's medical condition. [AR 473–76]. Dr. Gieseke noted that Mr. Espinoza suffers chronic lower back pain that completely incapacitates him during a "flare." [AR 474]. Dr. Gieseke opined that Mr. Espinoza would be unable to work form November 3, 2016 through November 11, 2016. [AR 475].

Mr. Espinoza visited Dr. Haney at SpineOne on November 29, 2016 for a follow-up regarding his medial branch block operation. [AR 514]. Mr. Espinoza reported "great relief for four days but now his pain has returned to where he is about an 8 out of 10." [*Id.*] Dr. Haney then performed a lumbar radiofrequency ablation. [*Id.*] This procedure significantly improved Mr. Espinoza's pain, and he reported on January 24, 2017 that he was "able to do a lot more activities at this point without much pain." [AR 506].

## II. Procedural History

The SSA initially denied Mr. Espinoza's application for DIB and SSI on April 9, 2015.

[AR 96–104]. Mr. Espinoza subsequently requested a hearing before an ALJ, which took place on March 14, 2017. [AR 144]. The ALJ ruled that Mr. Espinoza is not disabled. [AR 12–22]. According to the ALJ, although Mr. Espinoza has non-severe and severe impairments, they do not meet the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. [AR 15–16]. The ALJ then held that although Mr. Espinoza's RFC does not permit him to perform his past work as a bus driver or a baker, he can maintain employment as a call out operator, charge account clerk, and order clerk. [AR 20–21].

The SSA Appeals Council subsequently denied Mr. Espinoza's request for review, making the SSA Commissioner's decision final for the purpose of judicial review. *See* [AR 1–3]; *see* 20 C.F.R. § 416.1481 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised."). Mr. Espinoza timely appealed the ALJ/Commissioner's final decision to this Court. Compl., ECF No. 1.

### III. Hearing Testimony

The ALJ held a hearing regarding Mr. Espinoza's application on March 14, 2017. [AR 32–71]. Mr. Espinoza first testified that when he filed his application for disability benefits, he was experiencing difficulty bathing, cleaning, and doing basic chores because of his back pain. [AR 39]. Mr. Espinoza then stated that although he has had difficulty working since 2014, he has been able to make approximately $11,629.00 per year as a part-time customer service agent. [AR 43]. On average, he misses four days per month due to his back pain. [AR 46].

Mr. Espinoza then described his daily back "flare-ups." [AR 53]. He stated that his pain jumps from a level three to a seven, eight, or nine, which causes him to have trouble

communicating and doing daily activities. [*Id.*] When he has a severe flare-up, he has to perform stretches and exercises until the pain subsides. [*Id.*] Because of the potential for flare-ups, he cannot lift more than twenty-five pounds. [AR 53–54].

Mr. Espinoza's attorney then asked him to describe the pain he is currently experiencing. [AR 56]. He responded, "it is almost like somebody [with] a screwdriver or a knife in my back is twisting it around and shocking me at the same time." [*Id.*]

Mr. Espinoza testified that on an average day he wakes up around 7:00 a.m. and starts working from home at 9:00 a.m. [AR 57]. He takes short breaks every two hours to stretch his legs and generally takes a half-hour lunch break. [*Id.*] He is usually able to sit on his bed while he works, but his back pain sometimes forces him to lie down. [AR 57–58].

Mr. Espinoza's attorney then asked him whether his pain has improved over the last four to five years. [AR 59–60]. Mr. Espinoza responded that although he has received regular epidural shots and other treatment, he has experienced only short-term pain relief. [*Id.*] Although he stated that spine surgery is potentially an option, he would like to avoid surgery at only thirty-four years old. [AR 59].

The ALJ then questioned the vocational expert. [AR 63–67]. The ALJ asked the expert to imagine an individual with the following limitations: can perform only light work; can lift twenty pounds on occasion and ten pounds frequently; can stand or walk for only four hours in an eight-hour workday; can sit for no more than six hours in an eight-hour workday; must alternate sitting and standing; can sit for no more than thirty minutes at a time; can occasionally climb ramps and stairs; must not perform work on ladders, ropes, or scaffolds; and can occasionally kneel, crouch, or crawl. [AR 65]. The expert testified that this individual could perform the

duties of a customer service representative. [*Id.*] Additionally, the individual could maintain employment as a callout operator, charge account clerk, or order clerk. [AR 66].

The ALJ then added the additional limitation that the individual would need two fifteen minute breaks during the day, possibly to lie down. [*Id.*] The vocational expert testified that an individual with this impediment could not perform any of the jobs he identified. [AR 67]. Lastly, in response to a question by Mr. Espinoza's attorney, the vocational expert stated that there is no job in the national economy that would permit an individual to lie down while working. [*Id.*]

The ALJ issued an unfavorable decision on May 17, 2017. [AR 12–22].

## **LEGAL STANDARDS**

### I. SSA's Five-Step Process for Determining Disability

Here, I will review the ALJ's application of the five-step sequential evaluation process used to determine whether an adult claimant is "disabled" under Title II of the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Step one determines whether the claimant is presently engaged in substantial gainful activity. If he is, he is not disabled. *See* 20 C.F.R. § 404.1520. Step two analyzes whether the claimant has a medically severe impairment or combination of impairments, as governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that his impairment(s) would have more

than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. *See id.* Step three analyzes whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the claimant's impairment is listed or is equivalent to a listed impairment, he is presumed to be disabled. If the impairment does not satisfy step three, the ALJ must proceed to step four, which requires the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC") prevent him from performing work that he has performed in the past. If the claimant is capable of performing his previous work, either as he performed it or as it is generally performed in the national economy, he is not disabled. *See* 20 C.F.R. § 404.1520(e), (f); *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) ("[C]laimant bears the burden of proving his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy."). However, if the claimant establishes a prima facie case of disability based on the previous four steps, the analysis proceeds to step five, in which the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of his age, education, and work experience. *See* 20 C.F.R. § 404.1520(g).

## II. Standard of Review

My review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the ALJ applied the correct legal standards. *See Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *see also White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). Thus, the function of my review is "to determine whether the findings of fact . .

. are based upon substantial evidence and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970); *Bradley v. Califano*, 573 F.2d 28, 31 (10th Cir. 1978). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). I may not re-weigh the evidence nor substitute my judgment for that of the ALJ. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). However, reversal may be appropriate when the ALJ either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## **THE ALJ'S RULING**

The ALJ first ruled that Mr. Espinoza meets the insured status requirements of the Social Security Act through December 31, 2020. [AR 14]. Next, she determined that Mr. Espinoza has not engaged in substantial gainful employment since October 1, 2014—the alleged onset date. [*Id.*] Although Mr. Espinoza has worked after this date, the employment did not generate sufficient earnings to constitute substantial gainful activity. [*Id.*]

At step two, the ALJ held that Mr. Espinoza has the following severe impairments: (1) degenerative disc disease and (2) morbid obesity with subsequent weight loss. [AR 15]. The ALJ recognized that the record mentions hypertension, sleep apnea, asthma, and marijuana use; however, "none of these medically determinable impairments, considered singly or in combination, cause more than minimal limitations on the claimant's ability to perform basic

11

work functions." [*Id.*]

Moving to step three, the ALJ found that Mr. Espinoza's impairments or combination of impairments do not medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 16]. Specifically, she concluded the record does not establish the limitations required to meet Listing 1.04 for spine disorders. [*Id.*]

At step four, the ALJ held that Mr. Espinoza's impairments limit him to light work in which he can stand and walk for four hours; sit for six hours with normal breaks; alternate sitting and standing; sit for no more than thirty minutes at a time; occasionally climb ramps and stairs; and occasionally kneel, crouch, and crawl. [AR 16–20]. In making this RFC determination, the ALJ relied on Mr. Espinoza's objective medical evidence, including his MRIs and his physician's observations; his activities of daily living; and his testimony at the hearing. [*Id.*] The ALJ gave little weight to Dr. Gieseke's opinions that Mr. Espinoza is limited to part-time employment and is incapable of performing his job during a flare-up of his back. [AR 19–20]. Based on this RFC, the ALJ held that Mr. Espinoza is unable to perform his past relevant work as a bus driver or a baker. [AR 20].

However, at step five, the ALJ found Mr. Espinoza is capable of working as a call out operator, charge account clerk, and order clerk. [AR 21]. In coming to this conclusion, she primarily relied on the vocational expert's testimony. [*Id.*] Accordingly, the ALJ concluded that Mr. Espinoza has not been disabled from October 1, 2014 through the date of the decision. [*Id.*]

## **ANALYSIS**

Mr. Espinoza alleges the following errors by the Commissioner, which I address in turn: (1) failing to properly weigh Dr. Gieseke's medical opinion, and (2) calculating his RFC without

considering his non-severe impairments. Opening Br. 4–8, ECF No. 17.

## I. The ALJ Did Not Err in Her Analysis of Dr. Gieseke's Opinion Statements.

Mr. Espinoza argues the ALJ failed to properly apply the treating physician rule when she gave little weight to Dr. Gieseke's opinions that Mr. Espinoza must work part time and is incapacitated during his frequent flare-ups. Opening Br. 4–6, ECF No. 16. Specifically, Mr. Espinoza contends the ALJ erred by not discussing the factors listed in 20 C.F.R. § 404.1527(c). *Id.* at 6.

The treating physician rule generally requires that the Commissioner "give more weight to medical opinions from treating sources than those from non-treating sources."[1] *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2014); *see also* 20 C.F.R. § 404.1527(c)(2). When determining how much weight to give an opinion from a treating source, the ALJ must complete a two-step inquiry, each step of which is analytically distinct. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must determine whether the treating physician has offered a conclusive opinion; that is, whether it is to be accorded "controlling weight" on the matter to which it relates. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). To do so, the ALJ:

> must consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. . . [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F.3d at 1300 (applying Social Security Ruling 96-2p, 1996 WL 374188, at *2) (internal citations omitted). If the opinion of the treating physician is not entitled to controlling

---

[1] Because Mr. Espinoza filed his application prior to March 27, 2017, the ALJ was required to apply the treating physician rule. *See* 20 C.F.R. § 404.1527 (2017).

weight, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330. This is because, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins*, 350 F.3d at 1300.

The factors the ALJ must consider are:

> (1) The length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser*, 638 F.3d at 1331. Without a discussion of these factors, remand is required. *Watkins*, 350 F.3d at 1300–01. However, the ALJ is not required to explicitly analyze all six factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

I find the ALJ did not err in applying the treating physician rule. First, by stating that Dr. Gieseke's opinions are entitled to little weight, she impliedly determined that the opinions should not receive controlling weight. *See, e.g.*, *Armijo v. Astrue*, 385 F. App'x 789, 794–95 (10th Cir. 2010) (unpublished) ("[E]ven though the ALJ did not explicitly state that [the plaintiff's treating physician's] opinion was not entitled to controlling weight, that finding is implicit in his decision to accord little weight to the opinion.").

Second, the ALJ sufficiently analyzed the required factors. The ALJ discussed the nature of the treatment relationship and the type of examination performed when she stated that Dr. Gieseke's opinions are "based on the claimant's subjective complaints and allegations rather than

14

objective findings." [AR 20]. The ALJ also analyzed the third and fourth factors at length. She noted that Dr. Gieseke's opinions were inconsistent with Mr. Espinoza's spine MRIs, which showed only mild degenerative findings. [*Id.*] Additionally, she cited numerous inconsistencies between Dr. Gieseke's opinions and treatment notes. [AR 19–20]. For example, Dr. Gieseke's opinions were inconsistent with her observation that Mr. Espinoza is generally healthy; her conclusion that riding the bus, instead of working, aggravated his back condition; and her encouragement for him to return to work. [*Id.*] The Tenth Circuit regularly affirms when an ALJ applies lesser weight to a treating physician's opinion because it is inconsistent with the physician's own treatment notes. *Dixon v. Colvin*, 556 F. App'x 681, 683 (10th Cir. 2014) (unpublished); *McDonald v. Astrue*, 492 F. App'x 875, 883 (10th Cir. 2012) (unpublished).

The ALJ also discussed other factors diminishing the reliability of Dr. Gieseke's opinions. She noted that Dr. Gieseke did not detail the reasons for her conclusions. [AR 19–20]. According to the ALJ, "conclusory statements regarding the claimant's ability to work" are not entitled to great weight. [AR 20]. As for Dr. Gieseke's opinion in the FMLA paperwork that Mr. Espinoza could not work, the ALJ noted that this was a temporary restriction, which has little relevance to Mr. Espinoza's "overall ability to function on a daily basis." [*Id.*] I agree with the ALJ that limited and temporary restrictions generally receive less weight. *See* 42 U.S.C. § 423(d)(1)(A) (stating that an impairment must be expected to last at least twelve months); *Garcia v. Berryhill*, No. 16-cv-02797-LTB, 2017 WL 5151128, at *6 (D. Colo. Nov. 7, 2017) (declining to consider whether the ALJ erred in weighing a treating physician's temporary restrictions).

Although Mr. Espinoza is correct that the ALJ did not specifically discuss factors one or five, "[t]hat the ALJ did not explicitly discuss all the § 404.15227[] factors for each of the

medical opinions before him does not prevent this court from according his decision meaningful review." *Oldham*, 509 F.3d at 1258; *Griner v. Astrue*, 281 F. App'x 797, 800 (10th Cir. 2008) (unpublished) (affirming an ALJ's decision to apply lesser weight to a treating physician's opinion, notwithstanding that the ALJ did not discuss every factor). Because the ALJ supported her decision to give little weight to Dr. Gieseke's opinion with "specific, legitimate reasons," I will not disturb the ALJ's finding. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

## II. The ALJ Did Not Err in Calculating Mr. Espinoza's RFC.

Mr. Espinoza next argues the ALJ erred by not considering his non-severe impairments when formulating his RFC. Opening Br. 6–8, ECF No. 16. I find the ALJ sufficiently considered these impairments. Furthermore, even if the ALJ erred in this regard, such error was harmless.

First, the ALJ did not entirely fail to consider Mr. Espinoza's hypertension, sleep apnea, asthma, and marijuana use. At step two, the ALJ explained in detail why these impairments did not limit Mr. Espinoza's ability to maintain employment. [AR 15]. Although step-two findings do not permit an ALJ to entirely disregard non-severe impairments at step four, *Wells v. Colvin*, 727 F.3d 1061, 1068–69 (10th Cir. 2013), the ALJ stated at step four that she based her RFC decision "on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments." [AR 16]. Further, she explained that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." [*Id.*] Based on the Tenth Circuit's decision in *Bales v. Colvin*, 576 F. App'x 792 (10th Cir. 2014) (unpublished), I find this sufficient.

16

In *Bales*, the ALJ failed to explicitly discuss a variety of non-severe impairments when determining the claimant's RFC. *Id.* at 799. However, the ALJ stated that all of the claimant's impairments must be considered and that she assessed all the claimant's symptoms. *Id.* The Tenth Circuit found this sufficient to satisfy *Well's* requirement that the ALJ discuss all of the claimant's impairments. *Id.* According to the court, "the ALJ thoroughly discussed the medical evidence, and there is no indication that, despite not expressly mentioning [the claimant's] other medical problems, the ALJ did not take them into account." *Id.* Similarly, the ALJ discussed Mr. Espinoza's medical history in detail, including his history of hypertension, sleep apnea, asthma, and marijuana use, albeit in a separate portion of her opinion. [AR 15–20]. Thus, consistent with *Bales* and similar cases decided by the Tenth Circuit, I take the ALJ at her word that she considered all of Mr. Espinoza's impairments and symptoms. *See Bales*, 576 F. App'x at 799 ("[W]hen an 'ALJ indicates [s]he has considered all the evidence[,] our practice is to take the ALJ at [her] word.'" (quoting *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (alterations in original))); *see also Grede v. Astrue*, 443 F. App'x 323, 326 (10th Cir. 2011) (unpublished) (affirming the ALJ's RFC analysis, because "he stated that he had considered all of [the claimant's] symptoms and the medical evidence").

Even if the ALJ erred in her discussion of Mr. Espinoza's non-severe impairments, this error was harmless. "[T]he Tenth Circuit has found that failing to consider a non-severe impairment at step four is a harmless error when there is no substantial evidence that would allow a reasonable factfinder to include any limitation based on that impairment in the RFC." *Coast v. Astrue*, No. 12-cv-02887-RBJ, 2014 WL 5441198, at *4 (D. Colo. Oct. 27, 2014) (citing *Alvey v. Colvin*, 536 F. App'x 792, 795 (10th Cir. 2013) (unpublished)). Mr. Espinoza does not

17

provide, and I do not find in the medical record, any work-related issues caused by his non-severe impairments. Mr. Espinoza states only that "he can have exacerbations and wheezing" because of his asthma, he takes "anti-hypertensives," and he "utilizes a CPAP machine to control his condition." Opening Br. 7. Furthermore, Mr. Espinoza did not mention these conditions during the hearing. Accordingly, he does not meet his burden of providing evidence regarding "[t]he nature and severity of [his] impairment(s) . . . ." 20 C.F.R. § 404.1512; *Bales*, 576 F. App'x at 799 (finding any error in not considering the claimant's non-severe medical issues was harmless, because the claimant did not "identify how any of [her] conditions, either individually or in combination, affected her functioning during the time she claims she was disabled" (citing 20 C.F.R. § 404.1512)); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1173 (10th Cir. 2012) (finding that the ALJ's failure to consider the side effects of medications was harmless, because the claimant did not allege the side-effect had "any adverse effect on her ability to work").

Mr. Espinoza attempts to correct this deficiency in his reply brief by stating that the Commissioner's own determination in 2015 required that he avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation due to his asthma. Reply Br. 3, ECF No. 20. However, the Commissioner denied Mr. Espinoza's application in 2015 even including this limitation. Moreover, Mr. Espinoza does not explain how including this limitation in the RFC would have altered the ALJ's finding that Mr. Espinoza could perform the duties of a call out operator, account clerk, or order clerk. Thus, any error is harmless. *See Lara v. Colvin*, No. CIV-12-1249-L, 2014 WL 37746, at *4 (W.D. Okla. Jan. 6, 2014) ("[B]ecause the ALJ would not have found that Plaintiff is disabled based on her ability to perform the job of unskilled Housekeeper even if he had included a limitation that she could only relate to supervisors and

peers superficially, any error was harmless.").

**CONCLUSION**

In sum, I find the ALJ applied the correct legal standards and supported her findings with substantial evidence. Specifically, she did not err in her analysis of Dr. Gieseke's opinion statements. Additionally, she sufficiently considered Mr. Espinoza's non-severe impairments in calculating his RFC. Therefore, the ALJ's decision that Mr. Espinoza was not disabled since October 1, 2014, is **affirmed**.

Dated and entered at Denver, Colorado this 13th day of August, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge